## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHEL SCHLUP, and ) <br> MICHEL SCHLUP, TRUSTEE OF ) <br> MICHEL L. SCHLUP REVOCABLE ) <br> TRUST DATED JUNE 2, 2010, ) <br> ) <br>      **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> DEPOSITORS INSURANCE COMPANY, ) <br> and AMCO INSURANCE COMPANY, ) <br> ) <br>      **Defendants.** ) <br> ) | **Case No. 19-02095-CM-GEB** |

## MEMORANDUM AND ORDER

The instant matter is before the court on defendants' Motion for Judgment on the Pleadings.

(Doc. 21.) Defendants ask the court to determine that they have no duty to defend or indemnify

plaintiff in underlying state court litigation.[1] Plaintiff argues defendants owe a duty to defend at least

one cause of action under a theory nearly identical to one they have recognized for Mr. Schlup

(plaintiff's husband). For the foregoing reasons, the court denies defendants' motion.

### I.      BACKGROUND

This is an insurance dispute based on an underlying state court action arising from the

corporate real estate acquisition of Southridge Retail Center ("the Center"). In the underlying suit,

HPC Metcalf Investors ("HPC") alleges that plaintiff, Mr. Schlup, and others (collectively,

"Southridge defendants") conspired to misrepresent and conceal material information to induce HPC to

purchase the Center above its fair market price. The instant motion disputes only whether plaintiff is

---

[1] Plaintiff Michel Schlup filed the above-captioned suit both in her individual capacity and in her capacity as trustee. In the underlying suit, she is named as a defendant in her individual capacity and under multiple other theories including claims against the trust and other Southridge defendants. The parties do not distinguish between plaintiff in her individual capacity and plaintiff in her capacity as trustee.

owed a duty to defend Count VI of the underlying suit based on the insurance policies' "property damage" and "Personal and advertising injury" liability coverage.[2]

As relevant to Count VI, the underlying suit states that "[a]ll acts and omissions alleged herein against [plaintiff] were taken to benefit her individually and the [trust], and, in certain cases, to benefit other [Southridge] defendants and/or co-conspirators." (Doc. 1-3, at 4.) The petition further alleges each underlying defendant "was a principal, agent, servant, employee, conspirator and/or joint venturer of some or all of the other [underlying] [d]efendants, and was at all times relevant . . . acting within the course and scope of such relationship when committing the acts alleged in [the] [p]etition." (*Id.* at 5.)

Count VI claims Tortious Interference with Existing Contractual Relations against plaintiff individually, Mr. Schlup, the trust, and four others. (*Id.* at 35.) Count VI reincorporates all preceding allegations, further alleging that "[a]fter closing of the [purchase] Agreement, [d]efendants . . . caused Bootleg Liquors to vacate its leased premises and terminate its lease prior to the end of its lease term, thus interfering with the existing contract between HPC and Bootleg." (*Id.*) Plaintiff believes HPC may argue Mr. Schlup caused Bootleg to vacate its lease by making "disparaging" comments about Bootleg to its owners and others, and that HPC may further argue plaintiff caused Mr. Schlup to make these comments. Defendants are currently providing a defense to Mr. Schlup, under full reservation of rights, based partly on these "disparaging" comments.

## II.     LEGAL STANDARDS

### A.  12(c)

"After the pleadings have closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court reviews a motion under Rule 12(c) under the same standard as a motion under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita*,

---

[2] Defendants' indemnification argument assumes that they have no duty to defend. (*See* Doc. 22, at 13.) Accordingly, there is no distinction between defendants' two requested determinations.

226 F.3d 1138, 1160 (10th Cir. 2000).  The court may consider documents referred to in the complaint

if the documents are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity.  *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th

Cir. 1997).  "A motion for judgment on the pleadings should not be granted unless the moving party

has clearly established that no material issue of fact remains to be resolved and the party is entitled to

judgment as a matter of law."  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)

(quotation marks omitted).

## B.  Duty to Defend

An insurer has a duty to defend where there is a non-frivolous possibility that coverage exists.

*Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir. 1991) (applying Kansas

law); *see Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 407 (Kan. 1973).

Under Kansas law, the pleadings "are merely a starting point for the duty to defend analysis."  *Miller v.*

*Westport Ins. Corp.*, 200 P.3d 419, 424 (Kan. 2009).  The insurer "must look beyond the effect of the

pleadings and must consider any facts brought to its attention or any facts which it could reasonably

discover in determining whether it has a duty to defend."  *Spruill Motors*, 512 P.2d at 407.  The

interpretation of an insurance policy is a question of law, and a policy's terms are given their plain and

ordinary meaning unless the parties have expressed a contrary meaning.  *Hartford Fire Ins. Co. v. Vita*

*Craft Corp.*, 911 F. Supp. 2d 1164, 1176 (D. Kan. 2012) (citations omitted).  The insured has the

burden to prove coverage under the policy, and the insurer has the duty to show that a specific

provision of the policy excludes coverage.  *Id.*

## III.    DISCUSSION

Plaintiff advances two coverage theories under the relevant policies: (1) "property damage"

under coverage for "Products-completed operations hazard," and (2) "Personal and advertising injury."

(Doc. 23, at 4–7.)  Plaintiff further argues that the court should deny defendants' motion because

defendants relied upon extrinsic evidence when furnishing a defense to Mr. Schlup.  Defendants argue

that plaintiff's first theory is inapplicable because "Products-completed operations hazard" is a form of

contractor-subcontractor coverage and plaintiff does not allege an "occurrence" under the policy, and

her second theory is inapplicable because the underlying suit does not specifically allege plaintiff

caused Bootleg to vacate its lease by disparagement.  The court briefly addresses whether it may

consider plaintiff's extra-pleading materials in resolving defendants' motion.

### A.  Extra-Pleading Documents

Plaintiff attaches multiple letters to her opposition briefing, arguing that these letters show

defendants considered extrinsic evidence when providing a defense to Mr. Schlup.  Although the court

may consider the parties' arguments in briefing, the court cannot consider all of the attached letters

under the Rule 12(c) standard.  The court may consider indisputably authentic documents that are

referred to in and central to the complaint.  The attached documents are (1) a January 26, 2017 letter to

plaintiff's counsel, allegedly from defendants' counsel, memorializing the Southridge defendants'

understanding of the underlying litigation (Doc. 23-1); (2) a February 28, 2017 letter to Mr. Schlup

from Nationwide, memorializing a duty to defend under full reservation of rights (Doc. 23-2 (the

"Nationwide letter")); and (3) a February 14, 2018 letter to Mr. Schlup and one of plaintiff's attorneys,

memorializing coverage and pretrial developments in the underlying litigation (Doc. 23-3).[3]

Plaintiff alleges defendants agreed "[b]y letter dated February 14, 2017 . . . to provide defense

and coverage to Southridge and [Mr. Schlup] in the [underlying litigation]."  (Doc. 1-1, at 12.)

Defendants admit the existence of the letter, but note their full reservation of rights and provide the

corrected date of February 28, 2017.  (Doc. 9, at 14).  Accordingly, the letter to Mr. Schlup appears

---

[3] The Nationwide letter lists defendants Depositors and AMCO as the primary and umbrella underwriting companies, respectively.

authentic, central to plaintiff's claim that defendants owe her a duty to defend, and the court may consider the letter.

Although authenticity appears undisputed, the remaining two letters cannot be properly considered. While the court might infer that the January 26, 2017 letter is part of the information that resulted in defendants agreeing to defend Mr. Schlup, this letter is not referred to in the complaint. (*See* Doc. 1-1, at 12–13.) The Nationwide letter states that the insurers reviewed materials including extrinsic information provided by letters dated January 26, 2017 and January 27, 2017. (Doc. 23-2, at 6.) While plaintiff's opposition briefing states that the first of plaintiff's letters is part of that extrinsic information (Doc. 23, at 8–9), this does not meet the standard for considering extrinsic evidence on a motion under Rule 12(c). The February 14, 2018 letter requires the same result. The complaint alleges one communication after 2017, on or about October 29, 2018. (Doc. 1-1, at 13.) Because neither communication is referred to in the complaint, the court considers only the Nationwide letter where relevant to plaintiff's theory of "personal and advertising injury."

### B. Property Damage

Plaintiff's argument for "property damage" relies upon a provision for "Products-completed operations hazard." (*See* Doc. 23, at 20–21.) Plaintiff argues that HPC pursues recovery for property damage based upon "loss of use of the Bootleg Liquors tenant space," arising out of plaintiff's "work" under the policy. (*Id.*) Defendants argue that economic losses are not "property damage" in Kansas, and that this provision of the policy applies to insured contractors' work on a project. The court agrees "property damage" within "Products-completed operations hazard" does not apply for Count VI of the underlying suit.

The relevant policy defines "Products-completed operations hazard" coverage to "Include[] . . . 'property damage' occurring away from premises you own or rent and arising out of . . . 'your work'

-5-

except: (1) Products that are still in your physical possession; or (2) Work that has not yet been

completed or abandoned." (Doc. 1-2, at 15.) The provision further explains that "your work" is

deemed completed based on multiple conditions, including "[w]hen [the relevant] part of the work

done at a job site has been put to its intended use by any person or organization other than *another*

*contractor or subcontractor working on the same project*." (*Id.* (emphasis added).) The policy defines

"your work" as:

> (1) Work or operations performed by you or on your behalf; and
> (2) Materials, parts or equipment furnished in connection with such work or
> operations. . . . [including]
> (b)(1) Warranties or representations made at any time with respect to the fitness,
> quality, durability, performance or use of "your work"; and
> (b)(2) The providing or failure to provide warnings or instructions.

(*Id.* at 16.) "Property damage," in relevant part, means: "[l]oss of use of tangible property that is not

physically injured. . . . deemed to occur at the time of [a defined] 'occurrence'[.]" (*Id.* at 15.) An

"occurrence" is "an accident, including continuous or repeated exposure to substantially the same

generally harmful conditions." (*Id.* at 14.) The court doubts the possibility of "property damage" in

the underlying suit, which does not allege work or property damage in any capacity that could give

meaningful effect to the above policy language. However, assuming "property damage" may be

implicated, neither the underlying suit nor plaintiff's briefing identifies an "occurrence" within the

meaning of the policy and relevant to Count VI.

An "occurrence" under the policy requires an accident. (*See id.*) "An accident is simply an

undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often

accompanied by a manifestation of force." *Harris v. Richards*, 867 P.2d 325, 328 (Kan. 1994),

*modified on other grounds by Thomas v. Benchmark Ins. Co.*, 179 P.3d 421 (Kan. 2008). For HPC to

prevail against plaintiff on Count VI in the underlying suit, HPC must make the contrary showing that

plaintiff's alleged interference was intentional and malicious. *See Burcham v. Unison Bancorp.*, 77

P.3d 130, 151 (Kan. 2003).  Accordingly, plaintiff shows no non-frivolous possibility of coverage and defendants owe no duty to defend under this theory.  *See Am. Motorists Ins. Co.*, 946 F.2d at 1490.

### C.  Personal and Advertising Injury

In relevant part, "Personal and advertising injury" includes injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services[.]" (Doc. 1-2, at 14.)[4]  Defendants argue that HPC's underlying claims do not rely on a disparagement theory and plaintiff has not provided extrinsic evidence of any possible "disparagement" direction to Mr. Schlup.  Plaintiff argues that her coverage theories and those of Mr. Schlup lack meaningful distinction in the underlying suit.

The court disagrees with defendants' conclusion that HPC could not possibly advance a "disparagement" theory in Count VI of the underlying litigation.  The underlying suit is a state court action, and Kansas is a notice-pleading state.  *See Nungesser v. Bryant*, 153 P.3d 1277, 1284–85 (Kan. 2007).  In Kansas state filings, "the ultimate legal issues and theories on which the [underlying] case will be decided are [not apparent until] the pretrial order[.]"  *Id.* at 1284.  Furthermore, under Kansas law and in our circuit, coverage for "personal and advertising injury" defined as "publication or utterance of . . . defamatory or disparaging material" is sufficiently broad to include claims for tortious interference with contractual relations.  *See Hartford Fire Ins. Co.*, 911 F. Supp. 2d at 1177–78 (citing *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 980 (10th Cir. 1995)) (internal quotation marks omitted).  While the court agrees that Count VI does not expressly allege slander, libel, or disparagement, defendants' duty includes the possibility of coverage upon consideration of extrinsic evidence either in their possession or brought to their attention.  *Spruill Motors*, 512 P.2d at 407.

---

[4] The court notes that the relevant documents are split across multiple electronic filings.  As a result, pagination cited in briefing does not often correspond to the record as filed.

Upon consideration of extrinsic evidence, defendants agreed to furnish a defense for Mr. Schlup. The Nationwide letter shows that this decision was based in part on possible "comments to the owners of Bootleg and to others that Bootleg was no longer viable and that Bootleg needed to sell its inventory and go out of business." (Doc. 23-2, at 6.) Defendants evaluated their potential duty to defend Mr. Schlup "in his individual capacity, as an agent of Southridge[,] and as an agent of Plaza Garden Shops[,]" before providing a defense under a full reservation of rights and requesting additional information. (*Id.* at 3, 6–8.) Accordingly, defendants are in possession of facts that led them to provide a defense for Mr. Schlup, plaintiff's theory of coverage is based on the possibility that HPC will pursue an agency theory of liability against her for the same conduct, and HPC expressly reincorporates and alleges an agency theory of liability on all underlying claims. (*See* Doc. 1-3, at 4–5.) In light of the underlying suit's allegations and the extrinsic evidence known to defendants, the court cannot conclude that plaintiff's theory of coverage is frivolous as a matter of law. *See Am. Motorists Ins. Co.*, 946 F.2d at 1490.

The court recognizes defendants' position that the duty to defend is "contingent upon the claims actually advanced in the underlying litigation." *Collective Brands, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, No. 11-4097-JTM, 2013 WL 66071, at *16 (D. Kan. Jan. 4, 2013). However, the underlying suits in *Collective Brands* proceeded under federal pleading standards before resolution, and the court noted that "[the insured] ha[d] not pointed to any additional readily discoverable facts" that would lead to a possibility of coverage. *Id.* at *2–3, *16. The instant dispute is not a post-suit coverage action with the benefits of hindsight and a fully-developed record. Under these circumstances, defendants are not entitled to judgment on the pleadings, and the court denies defendants' motion.

**IT IS THEREFORE ORDERED** that defendants' Motion for Judgment on the Pleadings (Doc. 21) is denied.

Dated this 25th day of November, 2019, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
