## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHEL SCHLUP, et al.,      ) | |
|             ) | |
|        **Plaintiffs,**      ) | |
|             ) | |
| **v.**      ) | **Case No. 19-2095-HLT-GEB** |
|             ) | |
| **DEPOSITORS INSURANCE**      ) | |
| **COMPANY, et al.,**      ) | |
|             ) | |
|        **Defendants.**      ) | |
| _____ ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on four motions:

1. Plaintiff's Motion to Stay Discovery (**ECF No. 34**);

2. Defendants' Motion for Leave to Amend their Answer to Assert an Additional Affirmative Defense (**ECF No. 37**);

3. Defendants' Motion for Leave to File a Third-Party Complaint (**ECF No. 38**); and

4. Defendants' Motion to Compel Plaintiffs' Responses to Discovery (**ECF No. 45**).

For the reasons set forth below, Plaintiff's Motion to Stay Discovery (**ECF No. 34**) is **GRANTED in part and DENIED in part without prejudice**; Defendants' Motion for Leave to Amend their Answer to Assert Additional Defenses (**ECF No. 37**) is **GRANTED**; Defendants' Motion for Leave to File a Third-Party Complaint (**ECF No. 38**) is **GRANTED**; and Defendants' Motion to Compel Plaintiff's Responses to Discovery (**ECF No. 45**) is **GRANTED**.

I.      **Background**[1]

A.      **Nature of the Case**

This is an insurance dispute based upon an underlying state court action in Johnson County, Kansas, stemming from the corporate real estate acquisition of Southridge Retail Center ("the Center").[2]

1.      **Original State Court Action**

In the state action filed in May 2016, HPC Metcalf Investors ("HPC") alleges Michel Schlup ("Plaintiff"[3]), her husband Michael Schlup ("Mr. Schlup"), and others conspired to misrepresent and conceal material information to induce HPC to purchase the Center above its fair market price. (*See* Mem. and Order, ECF No. 27 at 1.)  After purchasing the Center, HPC learned at least three of the Center's commercial tenants were struggling financially and had considered terminating their leases.  HPC claims this

---

[1] Unless otherwise cited, the information recited in this section is taken from the pleadings (Petition, ECF Nos. 1-1 at 5; 8-1; Answer, ECF No. 9), and from the parties' briefs regarding the pending motions: Plaintiffs' Motion to Stay Discovery and related briefs (ECF Nos. 34, 35, 41, 42, 46); Defendants' Motion for Leave to Amend their Answer to Assert an Additional Affirmative Defense and related briefs (ECF Nos. 37, 43); Defendants' Motion for Leave to File a Third-Party Complaint and related briefs (ECF Nos. 38, 44); and Defendants' Motion to Compel Plaintiffs' Responses to Discovery and related briefs (ECF No. 45, 47, 48).  This background information should not be construed as judicial findings or factual determinations.

[2] *HPC Metcalf Investors, LP v. Southridge Retail Center, Inc., et al.*, No. 16CV02892 (Dist. Ct. Johnson County, Kansas, filed May 16, 2016.)

[3] As noted, plaintiff Michel Schlup filed the above-captioned suit in both in her individual capacity and in her capacity as trustee of a trust in which she is allegedly the primary beneficiary (*see* ECF No. 38-1 at 19).  In the underlying state action, she is named as a defendant in her individual capacity and under multiple other theories including claims against the Trust and other defendants. For the purposes of this Order, because the parties do not distinguish between Plaintiff in her individual capacity and Plaintiff in her capacity as trustee, the Court will simply refer to Michel Schlup in both capacities as a singular "Plaintiff."

fact was hidden prior to the sale. (*See* Order on Motion to Dismiss in underlying action, ECF No. 23-4.)

As part of its lawsuit, HPC alleges the Schlups and others caused the Bootleg Liquors business to vacate its leased premises and terminate its lease prior to the end of its term.  Pertinent to the instant matter, in Count VI of the state action, HPC claims Tortious Interference with the contract between HPC and Bootleg.  Plaintiff believes HPC will argue Mr. Schlup made "disparaging" comments about Bootleg to its owners and others; she (his wife) may have caused him to make such comments; and those comments ultimately resulted in Bootleg vacating its lease. (Mem. & Order, ECF No. 27 at 2).

At the time of the sale, Depositors Insurance Company insured the Center under a Premier Businessowners Insurance Policy ("primary policy"), while AMCO Insurance Company insured the Center under a Commercial Umbrella Liability Insurance Policy ("umbrella policy").

The initial state court petition was filed against only Mr. Schlup, the Center, and Bootleg Liquors. When Mr. Schlup and the Center sought coverage under both the primary and umbrella policies, the insurers declined to provide coverage, contending the underlying suit does not allege "bodily injury," "property damage" and "personal and advertising injury" as those terms are defined in the primary and umbrella policies. After this declination, counsel for Mr. Schlup and the Center met with counsel for the insurers to discuss the denial.

After the meeting, the insurers' counsel sent a letter to counsel for Mr. Schlup and the Center on or about January 26, 2017 to memorialize their discussions. In this letter, the insurers noted it was Mr. Schlup and the Center's position the insurer must consider not only the state court pleadings but any extrinsic evidence, and Mr. Schlup made comments to the Bootleg owners regarding its viability and need to close, and—if asked—Mr. Schlup would testify to making those comments.  Although the underlying suit did not mention or rely on these alleged statements to support the tortious inference claims; it was Mr. Schlup and the Center's position that these statements constituted disparagement and would fall under a "personal and advertising injury offense" as defined in both the primary and umbrella policies.

The next day, on or about January 27, 2017, counsel for Mr. Schlup and the Center responded to the letter, clarifying any alleged discussions between Mr. Schlup and the Bootleg owners occurred after the closing of the sale of the Center to HPC.  The sale closed on December 22, 2015, and the insurers' policies expired 11 days afterward.

Following these communications, Depositors decided to defend Mr. Schlup and the Center in the underlying case subject to a full reservation of its rights.  Depositors also asked Mr. Schlup and the Center to provide documents to support any alleged "extrinsic evidence" of what statements were made, to whom, and when.  Defendants contend, to date, they have been provided no such extrinsic evidence to support an obligation of defense.

In October 2018, HPC filed a Second Amended Petition in the underlying action, adding Plaintiff, individually and as Trustee of the Michel L. Schlup Revocable Trust

dated June 2, 2010, as parties to the case.  The Second Amended Petition alleges each defendant named in the state action was a principle, agent, servant, employee, conspirator and/or joint venturer of some or all other defendants and was acting in the scope of that relationship while committing the alleged acts. Plaintiff, individually and on behalf of the Trust, requested coverage for the underlying suit; however, Depositors declined to defend her, which lead to the filing of this case.

## 2.   The Instant Action

In this case, Plaintiff seeks a declaratory judgment against Depositors and AMCO (collectively "insurers" or Defendants).  The case was also originally filed in Johnson County District Court, but on February 19, 2019, Defendants removed the case to this federal court, citing diversity jurisdiction.  In this matter, Plaintiff contends the insurers owe an obligation to defend and indemnify her against the allegations in the underlying suit.  Defendants disagree with Plaintiff's contentions and deny any defense or indemnity obligation is owed to either Plaintiff individually or the Trust.

## B.   Procedural Posture

Following removal, Defendants timely filed an Answer (ECF No. 9).  At the scheduling conference, Plaintiff sought discovery on both the factual basis of HPC's claims in the underlying lawsuit and Defendants' affirmative defenses.  Defendants did not feel discovery was necessary and wished to proceed directly to dispositive motion briefing.[4]  A Scheduling Order was entered on May 8, 2019, providing a four-month

---

[4] This information is contained in the parties' Planning Report (dated April 30, 2019), which is maintained in the Chambers file of the undersigned U.S. Magistrate Judge.

discovery period and establishing a deadline of June 28, 2019, for any motions to amend the pleadings. (ECF No. 17.)  Within a month of the scheduling conference, Defendants filed a motion for judgment on the pleadings. (ECF No. 21).  The scheduled pretrial conference was postponed pending a ruling on the dispositive motion (*see* Order, ECF No. 26).  On November 26, 2019, District Judge Carlos Murguia[5] denied Defendant's motion for judgment. (Mem. & Order, ECF No. 27.)

In his decision, Judge Murguia examined whether Plaintiff was owed a duty of defense for Count VI of the underlying suit based on the insurance policies' "property damage" and "personal and advertising injury" liability coverage. (*Id*. at 2.)  Although the Court found the property damage clause did not require the insurers to provide a defense, the Court did find HPC could possibly advance a "disparagement" theory in Count VI of the underlying litigation.  Judge Murguia found, "While the court agrees that Count VI does not expressly allege slander, libel, or disparagement, defendants' duty includes the possibility of coverage upon consideration of extrinsic evidence either in their possession or brought to their attention."  (*Id*. at 7.)  The Court found that, after consideration of extrinsic evidence including letters to and from the insurers, the insurers' decision to defend Mr. Schlup was in part based upon his alleged comments to the owners of Bootleg and others.  Therefore, Defendants are in possession of facts that led them to provide a defense for Mr. Schlup, and because Plaintiff's theory of coverage is based on an agency

---

[5] On February 20, 2020, this action was reassigned to District Judge Holly L. Teeter. (Minute Order, ECF No. 39.)

theory of liability against her for the same conduct, the Court could not conclude that Plaintiff's theory of coverage is frivolous as a matter of law. (*Id.* at 8.)

Following Judge Murguia's decision, the undersigned held a pretrial conference on December 19, 2019. (Order, EF No. 31.) In the parties' pre-conference submission and during the pretrial conference, it became clear there were multiple unresolved issues, so the pretrial conference was continued to January 7, 2020. (*Id.*) During that conference, Defendants advised Plaintiff and the Court they wished to reopen discovery to obtain limited discovery related to the Judge Murguia's recent ruling (ECF No. 27), and to file motions for leave: (1) to amend their affirmative defenses; (2) to file a third-party complaint against Mr. Schlup; and (3) to file for summary judgment. (Order, EF No. 32.) After finding the prejudice to Defendants in denying them the opportunity to file motions was greater than the prejudice to Plaintiff if the requests were granted, the undersigned reopened discovery for a period of 45 days, to February 21, 2020, for the limited purpose of discovery related to the recent Court Order, and imposed deadlines for Defendants' anticipated motions. (*Id.*) All other case deadlines were stayed pending resolution of these issues. Soon thereafter, Plaintiff filed her motion to stay discovery (ECF No. 34), which was shortly followed by the other pending motions.

Having reviewed all pending motions and related briefing, the Court is now prepared to rule. Each motion is addressed in turn.

II.    **Plaintiff's Motion to Stay Discovery (ECF No. 34)**[6]

A.    **Plaintiff's Position**

Plaintiff contends Defendants are now inserting "several additional fact-dependent issues into this case" and believes it is most appropriate to stay the current action "in light of the extensive progress of the underlying state-court litigation." (ECF No. 42 at 1.) Plaintiff argues Defendants would suffer no prejudice by waiting until the conclusion of the underlying case, but the expansion of this action would prejudice her and her husband and would increase friction between state and federal courts because the same facts are being determined in the state action. (*Id.* at 2, 8.) At the time Plaintiff's motion was filed, the underlying suit was set to conclude discovery on April 1, 2020, with dispositive motions due on April 15 and trial set to begin on August 10, 2020. (*Id.*)

In Plaintiff's initial briefing, she contends the Court should stay this case until resolution of state action because the same fact-dependent issue will be decided in the state case, citing *Kunkel v. Continental Casualty Co.*[7] Plaintiff argues "all information sought by Defendants' discovery requests is already in Defendants' possession" because Depositors is already defending Mr. Schlup and the Center in the underlying action. (ECF No. 35 at 3.) Plaintiff argues the facts to be determined in this matter—through extrinsic evidence—are the content and circumstances of any damaging statements made by Mr. Schulp. Those same facts are at issue in the underlying litigation because they could

---

[6] The original motion to stay was filed by both Plaintiffs (ECF No. 34); however, the revised Memorandum in Support refers only to Plaintiff Michel Schlup individually. (ECF No. 42.) Although there is some confusion surrounding the filer, as discussed *supra* note 3, the Court refers to a singular Plaintiff.

[7] *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269 (10th Cir. 1989). *See* discussion *infra* section II.C.2.

form the basis of Count VI against Michel Schlup in that case.  Plaintiff also argues the Court should stay this federal case under the *State Farm Fire & Casualty Co. v. Mhoon*[8] test because it would not promote judicial economy to litigate the same facts in overlapping proceedings.

Plaintiff's amended memorandum (ECF No. 42) outlines several ways this Court will be considering the same facts as the state court or may be required to make overlapping factual findings. First, Defendants' discovery requests seek information about the content and circumstances surrounding statements giving rise to any "personal or advertising injury."  This is a fact-dependent issue to be resolved in the underlying case.  Second, because Defendants now seek to add Mr. Schlup and the Center as parties to this case (Mot., ECF No. 38[9]), Mr. Schlup's employment status is an issue of fact which will also be decided in the underlying litigation.  Third, by adding Mr. Schlup to this case, Defendants seek to deny him coverage on the grounds there was no "Personal or Advertising Injury" or "No Personal or Advertising Injury During the Policy Period." Plaintiff contends the Court has already ruled on this issue regarding her and found there may be coverage depending on how the underlying facts develop.  (Mem. & Order, ECF No. 27 at 8, noting "The instant dispute is not a post-suit coverage action with the benefits of hindsight and a fully-developed record.")

Finally, the fourth way this Court may overlap with state court factual findings involves Defendants' proposed additional affirmative defense against Plaintiff (Mot.,

---

[8] *State Farm Fire & Casualty Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir. 1994)).  *See* discussion *infra* section II.C.2.
[9] *See* discussion *infra* section V.

ECF No. 37[10])—the "Knowing Violation of Rights of Another" Exclusion.  Defendants also seek to invoke this exclusion against Mr. Schlup in the Third-Party Complaint.  This Exclusion turns on the intent of the insured, which is also at issue in the underlying litigation.  (ECF No. 42 at 7.)

Plaintiff contends continuing with discovery in this case would serve no useful purpose except to prejudice Plaintiff—by forcing her (and potentially Mr. Schlup, if added) to litigate in two courts simultaneously—and increase friction between the state and federal courts.  Conversely, Plaintiff believes there is no prejudice to Defendants in waiting until resolution of the state court action to continue with this case. Additionally, Plaintiff argues Defendants already have the discovery they seek by virtue of their defense of Mr. Schlup and the Center in the underlying action.

### B.    Defendants' Position

Defendants argue Plaintiffs' motion to stay discovery is an attempt to undermine this Court's Order permitting limited discovery and believe the discovery they requested is likely to confirm they have no obligation to defend or indemnify Plaintiff in the underlying action. (ECF No. 46 at 3.) They argue they must be permitted to "gather the facts and evidence to defend themselves against the action filed by the Plaintiffs." (*Id.*) Defendants maintain "the factual issues relevant to the declaratory judgment action are not identical to those that may arise in the tort action, a thus, a stay is not warranted. The Plaintiffs cannot have it both ways—they cannot claim extrinsic evidence exists that triggers a duty to defend yet fail to provide the facts surrounding this so-called evidence

---

[10] *See* discussion *infra* section IV.

to the Insurers." (ECF No. 46 at 8.) Defendants contend through the requested discovery, the insurers seek to confirm whether any extrinsic evidence exists to trigger their defense obligation. (*Id.* at 2-3.)

Defendants maintain Plaintiff fails to address the differences in the issues of the underlying action and the issues in the instant case.  The state court case focuses on Plaintiff's liability for specific torts, while this case will determine whether Defendants owe a duty to defend Plaintiff in the state action.  Because the factual issues relevant to the declaratory judgment action are not identical to those that could arise in the tort action, this matter should not be stayed.

Defendants note, "[u]nder Kansas law, an insurer's duty to defend is determined by examining the facts of the underlying complaint and any extrinsic evidence brought to the attention of the insurers." (ECF No. 46 at 7.)[11] Defendants argue Plaintiff has already conceded the pleadings in the underlying case do not contain allegations supporting a duty to defend. So, Plaintiff will rely on "extrinsic evidence" to prove coverage under the insurance policies.  If Plaintiff relies on extrinsic evidence—Defendants maintain they should be able to see it.  Defendants reason neither *Kunkel* nor the *Mhoon* factors support a stay of this case.

### C.    Legal Standards

Although the parties' arguments and authorities discuss stay in the context of whether this Court should exercise jurisdiction over this matter, neither party alludes to

---

[11] Defs.' Resp., ECF No. 46 (quoting *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1175 (D. Kan. 2012)).

the undersigned Magistrate Judge's general power to stay.  Both standards are worthy of mention.

### 1.    Stay Generally

A decision on whether to stay litigation is within the Court's inherent power to control its docket and rests in its sound discretion.[12]  The Court may exercise that power in the interest of economy of time and effort for itself and for counsel and parties appearing before it.[13]  When discharging its discretion, the Court "must weigh competing interests and maintain an even balance."[14]  The Tenth Circuit has cautioned, "[t]he right to proceed in court should not be denied except under the most extreme circumstances."[15] The party seeking stay "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."[16]

### 2.    Stay or Dismissal of Declaratory Judgments

Specifically regarding this Court's jurisdiction over the declaratory judgment action, both parties focus much of their arguments on the standards set forth in two

---

[12] *See Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-2494-DDC-TJJ, 2016 WL 4761839, at *1 (D. Kan. Sept. 13, 2016); *Universal Premium Acceptance Corp. v. Oxford Bank & Trust,* No. 02–2448–KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir. 1963)).

[13] *Universal Premium Acceptance Corp.*, 2002 WL 31898217, at *1 (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936)).

[14] *Pipeline Prods., Inc. v. Horsepower Entm't*, No. 15-4890-KHV-KGS, 2016 WL 1448483, at *1 (D. Kan. Apr. 13, 2016) (citing *Landis*, 299 U.S. at 255).

[15] *Kendall State Bank v. Fleming*, No. 12-2134-JWL-DJW, 2012 WL 3143866, at *2 (D. Kan. Aug. 1, 2012) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983)).

[16] *Landis*, 299 U.S. at 255; *see Accountable Health Sols.*, 2016 WL 4761839, at *1 (citing *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, No. 13-1168-EFM-TJJ, 2015 WL 3937395, at *1 (D. Kan. June 26, 2015)).

primary authorities: *Kunkel*[17] and *Mhoon*.[18]  In *Kunkel v. Continental Casualty Co.*,[19] the Tenth Circuit Court of Appeals articulated some considerations for determining whether to hear a declaratory judgment case, finding (among other factors) "a federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[20] But the *Kunkel* court clarified "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues."[21]

Later, in *State Farm Fire & Casualty Co. v. Mhoon*,[22] the Tenth Circuit expanded its analysis to include five factors a district court should consider when deciding whether to exercise jurisdiction over a declaratory judgment action.[23] Those factors are:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.[24]

---

[17] *See infra* note 19.

[18] *See infra* note 22.

[19] *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269 (10th Cir. 1989).

[20] *Id.* at 1276 (citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, (1942); *Western Casualty and Surety Co. v. Teel,* 391 F.2d 764, 766 (10th Cir. 1968)).

[21] *Id.*

[22] *State Farm Fire & Casualty Co. v. Mhoon,* 31 F.3d 979 (10th Cir. 1994) (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[23] *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 981 (10th Cir. 2012) (discussing the Court's earlier considerations in *Kunkel* and the expansion of considerations in *Mhoon*) (citing *Kunkel,* 866 F.2d at 1275; *Mhoon,* 31 F.3d at 983).

[24] *Mid-Continent Cas. Co.*, 685 F.3d at 980-81 (quoting *Mhoon,* 31 F.3d at 983; *accord U.S. v. City of Las Cruces,* 289 F.3d 1170, 1187 (10th Cir. 2002)).

Although the parties ask the Court to apply *Kunkel* and *Mhoon* separately, these authorities are essentially parts of the same analysis, as *Mhoon* was an expansion of *Kunkel* considerations.  When applying these primary authorities, courts balance a number of concerns, including the nature of the declaratory judgment claim,[25] while emphasizing the importance of avoiding "fact-dependent issues likely to be decided in another pending proceeding,"[26] and considering whether questions in the federal suit can better be settled in the proceeding pending in the state court.[27]  As with the decision to stay, the decision whether to exercise jurisdiction over a declaratory judgment action is a matter within the sound discretion of the district court.[28]

### D.     Discussion

The Court first turns to Defendants' request to strike Plaintiff's amended brief in support of her motion.  Following Defendants' initial Response to Plaintiff's Motion to Stay, Plaintiff filed an "Amended Memorandum." (ECF No. 42.)  Defendants argue this Amended Memorandum is "an improper second attempt to reiterate the arguments made in [the] original Motion to Stay and should be stricken." (ECF No. 46 at 6.)  Because this Court ordered no replies to be filed, Plaintiff had no opportunity to respond to Defendants' most recent arguments, but the Court finds it unnecessary. Plaintiff's

---

[25] *Cincinnati Ins. Co. v. Gage Ctr. Dental Grp., P.A.*, No. 12-2387-KHV, 2013 WL 5913751, at *8 (D. Kan. Nov. 1, 2013) (citing *United States v. City of Las Cruces,* 289 F.3d 1170, 1190 (10th Cir. 2002))

[26] *Id.* (citing *Kunkel*, 866 F.2d at 1276) (other notations and citations omitted).

[27] *Id.* (citing *Mid–Continent Cas. Co.*, 685 F.3d at 986).

[28] *Mid-Continent Cas. Co. v. Greater Midwest Builders*, No. 09-2066-EFM-DJW, 2009 WL 10688952, at *2 (citing *Allstate Property and Cas. Ins. Co. v. Salazar-Castro*, No. 08–2110–CM, 2009 WL 997157, at *1 (D. Kan. Apr. 14, 2009); *Sprint Corp. v. Aertoel, Ltd.*, No. 99-2547-JWL, 2000 WL 382031, at *2 (D. Kan. Mar. 17, 2000) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

amended brief (ECF No. 42) largely restates the same legal arguments made in her original brief (ECF No. 35) and adds additional facts regarding the status of the underlying litigation (now inaccurate[29]) and information from Defendants' more-recently-filed motions.  Though leave of Court to amend may have been a more appropriate technical procedure for Plaintiff to employ, Defendants had, and took, the opportunity to respond.  Given the amount of motion practice currently before this Court, the Court finds no party either advantaged or prejudiced by the information contained in the amended brief, and in its discretion the Court chooses to consider all briefing before it.

Frankly, the Court is troubled by the excessively contentions nature of the parties' briefing.  More importantly, although the parties focus on *Kunkel* and *Mhoon*, the Court is aggrieved by the parties' attempt to inject a jurisdictional argument at this stage of the litigation—after the undersigned's order permitting limited discovery.  While the undersigned magistrate judge certainly possesses the inherent power to stay this matter, it does not have the power to determine this Court's jurisdiction over the case, which is the ultimate question under those authorities.

---

[29] Given the recent COVID-19 pandemic and the challenges it has created for the practice of law and the court system's ability to conduct in-person hearings, this Court takes judicial notice of more recent filings in the underlying suit.  A Joint Motion for Second Amended Scheduling Order was filed on March 25, 2020, and on June 29, 2020, the August 2020 trial was cancelled and reset for September 20, 2021.  A motion for summary judgment (or hearing on said motion—the docket is unclear) is set for August 5, 2021, with a pretrial conference set for September 3, 2021.  (See Johnson County District Court case search system, located at http://www.jococourts.org/civroa.aspx?which=16CV02892.

Additionally, the Court finds neither party's positions wholly convincing for a multitude of reasons. The parties' positions have completely shifted since the initial scheduling conference, when Plaintiff thought discovery was necessary, but Defendant did not.[30] Defendants accuse Plaintiff of trying to reverse course and ask the Court not to exercise jurisdiction over a case Plaintiff filed—yet Defendants ignore the fact that Plaintiff originally filed her action in the same jurisdiction as the underlying case, which may have avoided the potential for conflicting factual findings. And, a large part of Plaintiff's arguments regarding stay depend upon what she characterizes as the "extensive" progress of the underlying case. But those circumstances have also been altered dramatically, with trial now scheduled for September 2021—more than a year away.[31]

In its discretion, and in an effort to keep this matter moving toward resolution as efficiently as possible, the Court denies Plaintiff's motion in part, without prejudice, as follows. This Court has already ordered limited discovery to occur, and in line with that Order, the Court will permit the limited written discovery propounded by Defendants to proceed as outlined below in the analysis of the motion to compel (*infra* section III). Any disputes regarding such discovery must be taken up before the Court by telephone conference in order to handle them swiftly. The Court will also permit Defendants to amend their pleadings in an effort to have all affected parties' rights determined in a single action (*infra* sections IV, V).

---

[30] *See* parties' Planning Report, *supra* note 4.
[31] *See* Pl.'s Am. Mem., ECF No. 42 at 1; *but see* discussion *supra* note 29 discussing the progress of the state action.

The Court also grants Plaintiff's motion in part, to the extent that no additional discovery will be permitted, no additional amendments will be granted, and this case is expected to move expeditiously toward pretrial conference and dispositive motions. The discovery period is now concluded.  A pretrial conference is scheduled for **September 30, 2020 at 10:00 a.m.**  by dial-in telephone conference unless the judge determines that the proposed pretrial order is not in the appropriate format or that there are some problems requiring counsel to appear in person.  Counsel and any pro se parties must dial **888-363-4749** and enter **Access Code 9686294** to join the conference.  and the parties' proposed pretrial order is due to the undersigned no later than **September 23, 2020.**   All other potentially dispositive motions (e.g., motions for summary judgment), must be filed by **October 23, 2020.**  If the parties wish to renew their arguments regarding this Court's jurisdiction over the action, they should raise such arguments in conjunction with dispositive motions.  The trial is reset to **May 17, 2021 at 9:00 a.m**.  All guidelines and directives included in the original Scheduling Order (ECF No. 17) continue to govern this case.

### III.    Defendants' Motion to Compel Plaintiffs' Responses to Discovery (ECF No. 45)

Following the undersigned's order permitting limited discovery, Defendants propounded written discovery to Plaintiff on January 14, 2020. (*See* Mot., ECF No. 45.) In response, Plaintiff filed the motion to stay on February 13 and objected to all discovery requests on the same date, leading to the instant motion.

17

## A.     Duty to Confer

As a threshold matter, the Court first considers whether the parties have sufficiently conferred regarding Defendants' Motion, as is required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.[32]   Defendants' Motion includes a Certificate of Good Faith Conference (ECF No. 45 at IV); however, this certificate notes after an initial meet and confer letter, Defendants did not wait for Plaintiff to fully respond before filing the instant motion. (See Pl.'s Resp., ECF No. 47.)   Plaintiff's counsel notified defense counsel he would be out of town for one week but intended to respond.  The motion was filed prior to counsel's return.   Although Defendants' deadline to file any discovery motion was quickly approaching, neither party approached the Court for an extension. Under these facts, it does not appear the parties actually conversed, conferred, or compared views as required by the Local Rule.

But the Court questions the cleanliness of either party's hands in this instance.  For example, though Plaintiff's counsel was out of the office, counsel had enough time to prep the motion to stay, yet not enough time to confer.   At the same time, Defendants waited until nearly the end of their 30-day period to file their motion before attempting conferral.

---

[32] D. Kan. Rule 37.2 provides the court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37, unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party.  It requires the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."  D. Kan. Rule 37.2.

Given the above, the Court is well within the law to simply deny Defendants' motion.  However, in the interest of moving this matter to pretrial and to consider this issue along with the other pending disputes, the Court in its discretion will decide the motion on its merits.

**B.      Requests at Issue**

In their first requests for discovery, Defendants ask Plaintiff to answer 11 interrogatories and respond to nine requests for production. (ECF No. 45-1, Ex. 1.) Those requests include:

- **11 interrogatories:** aimed at identifying the statements made by Mr. Schlup regarding Bootleg (Interrogs. #2-4); identifying all executive officers, directors, and shareholders of the Center (Interrogs. #5-7); information regarding whether Mr. Schlup was an employee or independent contractor of the Center (Interrogs. #8-9); "all evidence supporting . . . duty to defend (Interrog. #10); and other general questions; who helped complete the interrogatories (Interrog. #1) and identifying all documents referenced/utilized in answers (Interrog. #11).

- **9 Requests for Production:**

  - RFP #1: all written discovery & deposition transcripts from the underlying lawsuit;

  - RFP#2: all documents to demonstrate/support comments made by Mr. Schlup;

  - RFP#3: all documents showing Mr. Schlup's comments are central to, or have been relied on by HPC in the underlying lawsuit;

  - RFP#4:  all documents showing the alleged comments referenced in the "Rogers letter" (the January 2017 letter from the insurer counsel, David Rogers, to Mr. Schlup's attorneys, Bill Skepnek and Brennan Fagan) were false or a misrepresentation;

o RFP#5:   documents showing Mr. Schlup was an executive officer, director, shareholder and/or employee of the Center (*see* Interrogs. #5-8);

o RFP#6: any employment or independent contractor agreement between Mr. Schlup and the Center (*see* Interrogs. #8-9);

o RFP#7: documents showing Mr. Schlup was acting on behalf of the Center when he made the comments;

o RFP#8: all documents supporting Plaintiff's contention that the underlying suit seeks damages due to a "personal and advertising injury" under the insurance policies;

o RFP#9: any documents referenced or consulted in the interrogatories.

Plaintiff provided no answers to the discovery requests, but repeated a nearly-identical objection in all her responses (ECF #45-2):

Objection. Defendants have engaged insurance defense counsel, Larson & Blumreich, LLC, in the Lawsuit to provide defense and indemnity, under a reservation of rights, to Southridge Retail Center, Inc. and [Mr.] Schlup pursuant to the Policies at issue in this matter. As such, all information sought by Defendants pursuant to this Interrogatory is already within Defendants' possession, custody, and control. Plaintiffs further object on the basis that Plaintiffs have filed a Motion to Stay the Proceedings pending the outcome of the Lawsuit, and pending resolution of that Motion, Plaintiff may have no obligation to [answer this or any other Interrogatory or produce responsive documents].

## C.    Arguments of the Parties

Defendants contend Plaintiff's reliance on the motion to stay as a basis for objection is improper because there is no automatic stay of discovery despite a pending motion.  Because Plaintiff did not seek a protective order, the discovery responses are not stayed.  Additionally, Defendants believe the objections and motion to stay are an improper means to reassert Plaintiff's objections previously considered in the January

conference, and an attempt to circumvent the Court's prior order permitting discovery. Finally, Defendants dispute the information sought is already in their "possession, custody or control" by virtue of the underlying suit, and contend they maintain "completely separate" claim files for the two lawsuits.  Defendants argue they do not have access to the information discovered in the underlying suit, and even if they did, the information they request for this action is distinct from that which would be discovered in the state case. (Mot., ECF No. 45.)

Plaintiff contends Judge Murguia's Order specifically identifies the extrinsic evidence he both considered and decline to consider, and this evidence is all that is necessary to trigger Defendants' duty of defense.  Plaintiff argues all the information sought by the requests is already in Defendants' possession as a result of the insurers' agreement to provide a defense to Mr. Schlup in the underlying case.  Although Defendants contend they keep separate case files, they have access to both.  And, Plaintiff argues because she asked for a stay of this case, it would reduce the burden and expense of production for her to wait for the decision on the issue of stay before producing the discovery.

### D.    Legal Standards

A brief review of the applicable standards for discovery is necessary.   Fed. R. Civ. P. 26(b)(1) provides the general scope of discovery, outlining "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Disputed in this case are responses to both interrogatories and requests for production.  Fed. R. Civ. P. 33 allows a party to

serve on another party written interrogatories within the scope of Rule 26(b).   Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath,[33] and any ground for objection must be stated with specificity.[34]

Fed. R. Civ. P. 34 allows for parties to serve document requests within the scope of Rule 26(b).  The rule requires a party to respond in writing, stating documents will be produced or inspection will be permitted as requested, or the responding party must state with specificity the grounds for any objection.[35]

Both Fed. R. Civ. P. 37 and D. Kan. Rule 37.1 permit a party seeking discovery to file a motion to compel answers or production.  Although Rule 37(a)(3)(B) permits such a motion in the event of a responding party's failure to answer or respond, Rule 37(a)(4) also premises evasive or incomplete answers or responses must be treated as a failure to answer or respond.

### E.    Discussion

At the outset, Plaintiff's objections related to her request for stay are overruled. As discussed above, the Court denied in significant portion Plaintiff's request for stay, and the related objections to the Defendants' discovery requests are likewise overruled. During the January 7 hearing, the Court heard the arguments of both parties, permitted such discovery, and expects it to be complete.  Although Plaintiff wordsmiths the Court's intentions by suggesting the permitted discovery is actually outside Judge Murguia's order (*see* paragraph 10 of Pl.'s Resp., ECF No. 47)—it was never the intention of this

---

[33] Fed. R. Civ. P. 33(b)(3).
[34] Fed. R. Civ. P. 33(b)(4).
[35] Rule 34(b)(2)(B), (E).

Court to grant Defendants the ability to conduct discovery—yet not actually anticipate the discovery to be completed.

Although Judge Murguia's order identified specific evidence he examined in his decision and identified that which he determined was outside the province of Rule 12—nothing in the order suggests there is no additional evidence needed, or that other evidence should be precluded. In fact, Judge Murguia's order notes the record is not fully developed. (Mem. & Order, ECF No. 27 at 8.)

Discovery is broad.[36]  Although Plaintiff is convinced she knows precisely which information Defendants may or may not need to defend this action—it is Defendants' prerogative to gather evidence it believes it may need to pursue the theory of their case, so long as the discovery stays within the bounds of Rule 26(b)(1).  This Court cannot find the information sought by Defendants is irrelevant on its face, and Plaintiff has not met her burden to demonstrate either lack of relevance or that the potential harm the discovery could cause would outweigh the presumption in favor of broad disclosure.[37]

Rule 33(d) does allow a party to answer an interrogatory by referencing records already produced if "the burden of deriving or ascertaining the answer will be substantially the same for either party" and the records are specified "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding

---

[36] *See Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (discussing "Relevance is broadly construed at the discovery stage of litigation" and ". . . the ordinary presumption in favor of broad discovery.")
[37] *Johnson ex rel. Johnson v. Olathe Dist. Sch.*, 212 F.R.D. 582, 586 (D. Kan. 2003).

party could."[38]   If the information has been produced in the underlying lawsuit, and Plaintiff knows this,[39] Plaintiff still bears the duty to identify the information—either by producing it or specifying the location of the same.  It is not appropriate for Plaintiff to repeatedly object on the basis that Defendants *may* be in possession of some documents. Even if the insurers have engaged defense counsel to defend Mr. Schlup in the underlying suit, the insurers are not parties to that case, and the Court takes defense counsel at their word that the information is contained in two completely separate claim files.

But the Court also takes note of Defendants' contention, "*[e]ven if the Insurers are in possession* of some or all of the requested documents, the Plaintiff's answers" are insufficient.  It is entirely unclear from the information presented to this Court whether Defendants actually have any of the requested information within their custody or control.  "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents."[40]   If Defendants <u>are</u> in possession or control of <u>any</u> of

---

[38] *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996). *See also Bettis v. Hall*, No. 10-2457-JAR, 2015 WL 1268014, at *6 (D. Kan. Mar. 19, 2015) (citing *Johnson v. Kraft Foods N.A., Inc.*, 236 F.R.D. 535, 545 (D. Kan. 2006)) (quoting *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680–81 (D. Kan. 2004)) ("a party 'may not merely refer' another party to documents 'hoping [the other party] will be able to glean the requested information from them').

[39] The Court takes judicial notice that Plaintiff's counsel in this matter, Mr. Brennan Fagan, is also counsel of record for Michael Schlup and the Center in the underlying state court case.  See *HPC Metcalf Investors, LP v. Southridge Retail Center, Inc., et al.*, No. 16CV02892 (Dist. Ct. Johnson County, Kansas, filed May 16, 2016.)

[40] *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516 (D. Kan. 2007) (citing *Super Film*, 219 F.R.D. at 651 (citing *Comeau v. Rupp*, 810 F. Supp. 1127, 1166 (D. Kan. 1992); *see also McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 692 (D. Kan. 2000); *Pulsecard, Inc.*, 168 F.R.D. at 307).

the items sought from Plaintiff, or even if they have the "practical ability"[41] to access the information "irrespective of legal entitlement,"[42] they are duty-bound to investigate and say so.  Although the purpose of discovery is to gather all potential evidence, Defendants do not have a right to seek information within their own control, or duplicative information which causes an undue burden to Plaintiff.

Plaintiff's objections to Defendants' discovery requests are overruled.  However, the Court expects counsel to confer regarding the most efficient manner in which to obtain the requested information.  Whether produced by Plaintiff or in the event any documents are in Defendants' control, counsel must work together to achieve full responses no later than **September 18, 2020**.

### F.    Fees

Defendants seek an award of their attorneys' fees and expenses in filing their motion to compel.  Despite the granting of Defendants' motion, at this juncture, the Court finds the award of expenses inappropriate under Fed. R. Civ. P. 37(a)(5)(A)(i) and (iii).  Although Defendants contend there is "no reasonable explanation" for Plaintiff's deficient responses, the Court disagrees.  While Plaintiff will be required to respond, the Court does not find Plaintiff's arguments to be wholly without merit, and again notes the parties' lack of conferral prior to the filing of the motion.  Under these circumstances, the Court finds an award of expenses unjust, and declines to award fees.

---

[41] *Ice Corp.,* 245 F.R.D. at 516 (quoting *American Maplan Corp. v. Heilmayer,* No. 00–2512–JWL, 2002 U.S. Dist. LEXIS 993 at * 4 (D. Kan. January 21, 2002).
[42] *Id*.

### G.    Conclusion

Therefore, in its discretion and for the reasons stated above, the Court **GRANTS** Defendants' Motion to Compel.   The Court expects the information to be produced forthwith, after the parties' good-faith conferral efforts and in any case no later than **September 18, 2020**.

## IV.   Defendants' Motion for Leave to Amend their Answer to Assert Additional Defenses (ECF No. 37)

Shortly after Plaintiff's motion to stay, Defendants filed their motion for leave to amend their answer.  As noted above, the scheduling order required any motions for leave to amend the pleadings to be filed by June 28, 2019.  However, after discussion during the January 2020 pretrial conference, the undersigned permitted Defendants to file their instant motion. (Order, ECF No. 32.)

### A.    Defendants' Position

Defendants' original Answer included nine affirmative defenses.   In particular, their Sixth Affirmative Defense claimed Defendants owe no duty to defend and/or indemnify Plaintiff for those "personal and advertising injury" claims precluded from coverage "by any exclusion, limitation or condition of the Primary Policy and/or Umbrella Policy." (Ans., ECF No. 9 at 21.)  Defendants now seek to amend their Answer for the first time to specify an exclusion in this defense:  the "Knowing Violation of Rights of Another Exclusion," which is contained in both the primary and umbrella policies.

Defendants argue Fed. R. Civ. P. 15(a)(1) applies to permit amendment. They contend this amendment to their Answer will not cause delay. Despite the procedural posture and age of this case, discovery has only recently been issued and no trial date has been set. Defendants argue it is unlikely additional discovery will be needed for this new affirmative defense. Therefore, Defendants reason Plaintiff will not be prejudiced by the amendment. Defendants maintain the amendment arises from the same subject matter set out in the original Answer and raises no significant factual issues.

### B.    Plaintiff's Position

In Plaintiff's Response to Defendants' motion, she contends Defendants have known about this exclusion through the defense provided to Mr. Schlup in the underlying case, and their attempt to now insert these issues into this action creates concurrent litigation and prejudice to the insureds. (ECF No. 43 at 2.) In that vein, Plaintiff incorporates by reference her Amended Memorandum in Support of her Motion to Stay. (ECF No. 43, referencing ECF No. 42.) Plaintiff asks this Court to stay a decision on Defendants' motion, but does not address the Rule 15 or Rule 16 standards for amendment.

### C.    Legal Standards

A brief review of the legal standards regarding amendment is necessary in considering Defendants' motion.

#### 1.    Fed. R. Civ. P. 16 – Good Cause

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated. It provides that a "schedule may be

modified only for good cause and with the judge's consent."  When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[43] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[44]  Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[45] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[46]  The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[47] A lack of prejudice to the nonmovant does not constitute "good cause."[48] The district court has discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines, and such a decision is reviewed only for abuse of

[43] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (citations omitted).
[44] *Id.*
[45] *Id.*
[46] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).
[47] *Id.*
[48] *Id.* (citing *Deghand*, 904 F. Supp. at 1221).

discretion.[49]  If the Court finds Rule 16 is satisfied, the Court then analyzes the request

for amendment under Fed. R. Civ. P. 15.

### 2.     Fed. R. Civ. P. 15 – Factors for Amendment

The Rule 15 standard for permitting a party to amend his or her pleading is well-

established.  A party may amend its pleading as a matter of course under Rule 15(a)(1),

either before the responding party answers or within 21 days after service of a responsive

pleading.  However, in cases such as this where the time to amend as a matter of course

has passed, without the opposing party's consent a party may amend its pleading only by

leave of court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and

the decision to allow an amendment is within the sound discretion of the court.[50]  The

court considers a number of factors in deciding whether to allow an amendment,

including timeliness, prejudice to the other party, bad faith, and futility of amendment.[51]

In exercising its discretion, the court must be "mindful of the spirit of the federal rules of

civil procedure to encourage decisions on the merits rather than on mere technicalities."[52]

The Tenth Circuit acknowledged Rule 15 is intended "to provide litigants 'the maximum

opportunity  for  each  claim  to  be  decided  on  its  merits  rather  than  on  procedural

---

[49] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).

[50] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[51] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[52] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

niceties,'"[53] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[54]

With these standards in mind, the Court evaluates Defendants' motion.

### D.    Discussion

Although the parties' arguments regarding the applicable standards were scarce to minimal, each of the standards is addressed in turn.

### 1.    Good Cause

While neither of the parties' briefs mention good cause, the Court did discuss the timing of the motion during the January 7, 2020 hearing and heard the positions of both parties at that time.  During the hearing, Defendants explained they believed they had a basis in law to believe this was a non-coverage action, and until Judge Murguia's ruling, they did not believe they would need additional discovery or other motions.

Given the unusual posture of this case, and the prior discussions, the Court finds good cause under Rule 16(b)(4) for Defendants' failure to timely seek amendment prior to the scheduling order deadline.

### 2.    Timeliness

Upon a finding of good cause under Rule 16, the Court must assess whether the standards for amendment under Rule 15 (a)(2) have been satisfied.  For the reasons discussed above, the Court finds Defendants adequately explained their delay. Less than

---

[53] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).
[54] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

three weeks following denial of the motion for judgment, Defendants notified the Court of their intent to request leave to file their motions in their initial proposed Pretrial Order.[55]   Therefore, Defendants' motion will not be denied on the basis of untimeliness under Rule 15(a)(2).

### 3.    Undue Prejudice

As the party opposing the amendment, Plaintiff bears the burden to demonstrate undue prejudice within the meaning of Rule 15.[56]  Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[57]   While any amendment invariably causes some "practical prejudice," undue prejudice means the amendment "would work an injustice to the [party opposing amendment]."[58]

Considering this "most important factor,"[59] the Court finds Plaintiffs do not demonstrate prejudice sufficient to prohibit the proposed amendment.   Defendants' proposed amended defense is a specification of what was already articulated in the original Answer.  Defendants admitted they were unlikely to need additional discovery as a result of the amendment, and this Court has already denied any additional discovery (*see* discussion *supra* section II.D), so the amendment will not cause additional delay.

---

[55]  The parties emailed their proposed Pretrial Order to the chambers of the undersigned Magistrate Judge on December 12, 2019 (copy maintained in Chambers file).
[56] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[57] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).
[58] *Id*. (citing *Sturdevant,* 2008 WL 4198598, at *3; other internal citations omitted).
[59] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

Any argument the amendments were sought on the close of discovery in the underlying action is now moot, because the trial in the underlying action is now more than a year away.[60]  The most important factor in the Court's determination of whether to permit amendment is whether the amendment would prejudice the nonmoving party.[61]  Finding minimal prejudice, and certainly no undue prejudice, this factor weighs in favor of amendment.

### 4.    Bad Faith

Finding Defendants demonstrated good cause for their delay in seeking amendment, and no undue prejudice exists, the Court next considers whether the amendment is pursued in good faith.    Although Defendants could have sought amendment sooner, the Court also understands Defendants' intent to clarify the issues with the early Rule 12 motion and to save expenses by doing so.    Although Plaintiff contends Defendants now wish to simply take another bite at the apple because they were unhappy with Judge Murguia's ruling—the ruling did narrow the issues before the Court, which benefits both parties.    Even if Defendants' strategy failed, their actions do not rise to the level of bad faith.    Furthermore, Plaintiff does not accuse Defendants of bad faith, and the Court finds none.    Therefore, this factor weighs in favor of amendment.

---

[60] *See* discussion *supra* note 29.

[61] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

### 5. Futility

Although neither party addresses futility arguments, the Court briefly examines the final factor addressed under Rule 15—the potential futility of the proposed amendment.   The party opposing amendment bears the burden of establishing its futility.[62]  When a defendant moves to amend an answer to add an affirmative defense, futility is examined in the context of a motion to strike under Fed. R. Civ. P. 12(f).[63] Rule 12(f) states that the court "may strike from a pleading an insufficient defense . . . ." "Within the meaning of Rule 12(f), a defense is insufficient if it cannot succeed, as a matter of law, under any circumstances."[64] To warrant striking a defense, its insufficiency must be "clearly apparent" and "no factual issues exist that should be determined in a hearing on the merits."[65]

"A motion to strike an affirmative defense as insufficient is disfavored as a drastic remedy."[66] If there is any doubt as to whether to strike a matter, courts should deny the

---

[62] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[63] *Livingston*, 2012 WL 2045292, at *2 (citing *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011)).

[64] *Id.* (citing *Layne Christensen Co.*, 2011 WL 3847076, at *6) (internal citations and quotations omitted).

[65] *Id.* (citing *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 649 (D. Kan. 2009)).

[66] *Id.* (citing *Wilhelm v. TLC Lawn Care, Inc.,* No. 07–2465–KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

motion.[67] Courts will usually deny a motion to strike unless the allegations have "'no possible relation to the controversy and may prejudice the opposing party.'"[68]

As discussed above, the Court finds little prejudice to Plaintiff in allowing the amendment. And Plaintiff makes no futility argument despite it being her burden to do so as the party opposing amendment. Although neither party makes futility arguments, this factor still weighs slightly in favor of amendment because striking a defense is a disfavored, drastic remedy.

### E. Conclusion on Amendment of Answer

Plaintiff's arguments focus solely on the issue of stay, which has been addressed ad nauseum above. Because the balance of factors weigh in favor of amendment, the Court will permit the filing of the proposed amendment, which is consistent with the "spirit of the federal rules of civil procedure to encourage decisions on the merits." [69] Defendants must file their amended answer **within 7 days.**

## V. Defendants' Motion for Leave to File a Third-Party Complaint (ECF No. 38)

Concurrent with their motion to amend their answer, Defendants also seek leave to file a third-party complaint. (Motion, ECF No. 38.)

### A. Defendants' Position

Defendants seek to add Mr. Schlup and the Center as third-party defendants in this case. They contend the addition of these parties advances the purposes of Fed. R. Civ. P.

---

[67] *Id.* (citing *Miller v. Pfizer, Inc.,* No. Civ. A. 99–2326–KHV, 1999 WL 1063046, at *3 (D. Kan. Nov. 10, 1999)).

[68] *Id.* (citing *United States ex rel. Smith v. Boeing Co.,* No. 05–1073–WEB, 2009 WL 2486338, at *3 (D. Kan. Aug. 13, 2009) (other citations omitted).

[69] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).

14, which are to promote judicial efficiency and obtain consistent results. (ECF No. 38 at 6.)  Although this suit currently focuses on the insurers' duty to defend Plaintiff, and the underlying suit does not reference any alleged comments made by Mr. Schlup, both Mr. Schlup and the Center contend he made the comments to Bootleg that are the center of HPC's tortious interference claims.  And, the underlying suit's claims against Plaintiff are potentially based on an "agency" theory of liability—that Mr. Schlup's alleged comments may be imputed to Plaintiff.  Therefore, Defendants argue Plaintiff's claims are related to the comments Mr. Schlup stated he made. (*Id.*)

Because Mr. Schlup's comments are at the center of the tortious inference claim, whether Defendants owe a duty to defend any of the insureds will require determining when the statements were made, to whom, whether they were true, and whether the same statements are the topic of HPC's underlying claims.  When this Court decides whether a "personal and advertising injury" occurred under the policies, this decision will affect not only Plaintiff but also Mr. Schlup and the Center. (*Id*. at 7.)

Defendants argue Plaintiffs will not be prejudiced by the proposed Third-Party Complaint, because it does not significantly delay Plaintiffs' case.  There is no trial date set for this case, and Defendants are not seeking additional extension of the discovery deadline.  Defendants believe the information they need to pursue the claims in the Third-Party Complaint has already been requested from Plaintiffs (the topic of the motion to compel addressed *infra* section III).  Defendants contend adding Mr. Schlup and the Center to this lawsuit will promote efficiency, because it reduces the need for another lawsuit to determine the potential coverage issues. (ECF No. 28 at 7.)

### B.      Plaintiff's Position

Plaintiff argues it has been more than three years since Plaintiff, Mr. Schlup, and the Center became parties to the underlying state action.  Although this Court already determined Plaintiff has advanced a non-frivolous claim for defense, which triggered the Defendants' duty to defend Plaintiff, Defendants are trying to circumvent the coverage for Plaintiff by adding Mr. Schlup and the Center in this case. (ECF No. 44 at 2.)  The underlying litigation is progressing, with Plaintiff paying for her own defense while Mr. Schlup and the Center are being defended by the insurers. (ECF No. 44 at 2.)  Plaintiffs focus, in part, on the prospect that the underlying litigation was set for trial in August 2020 (although this has changed considerably since the briefing was complete).[70]

Again, Plaintiff relies on her arguments in her Motion to Stay and Amended Memorandum in Support and incorporates those arguments by reference. (ECF No. 44 at 2.)  Plaintiff contends Defendants' request is belated, and she will be prejudiced by being forced into discovery over factual issues Defendants have known about for over three years, all "on the eve of the close of discovery in the Underlying Litigation."  (ECF No. 44 at 2.)  Plaintiff asks this Court to stay a decision on Defendants' motion for the same reasons articulated in her motion to stay the case.

### C.      Legal Standards

Defendants rely on Fed. R. Civ. P. 14 as the applicable standard for filing a third-party complaint.  Although not mentioned in briefing, as noted above, Rule 16 provides general standards for pretrial management.  Both rules are implicated in Defendants'

---

[70] *See* discussion *supra* note 29.

request, although Plaintiff discusses neither in her briefing.  Rule 16 provides the starting point.

### 1.    Fed. R. Civ. P. 16

Although neither party addresses the legal standards for the timing of Defendants' motion, this Court must consider it.  As described above (*see* discussion *supra* sections IV.C.1, IV.D.1), Rule 16 requires a pretrial scheduling order to place limits on the time to join other parties and amend the pleadings.[71]  The rule provides that a "schedule may be modified only for good cause and with the judge's consent."

In addition to the latitude in pretrial management afforded by Rule 16, "[d]istrict courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion."[72]  Even when a party has run afoul of the rules, the Court maintains the inherent ability to administer its cases, "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[73]  As noted by the Tenth Circuit Court of Appeals, "[o]ur justice system has a strong preference for resolving cases on their merits

---

[71] Fed. R. Civ. P. 16(b)(3)(A).

[72] *Garza v. Davis*, 596 F.3d 1198, 1205 (10th Cir. 2010) (citing *United States v. Nicholson,* 983 F.2d 983, 988 (10th Cir.1993) (internal citations omitted).

[73] *United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) (noting "[t]he power of district courts to manage their dockets is deeply ingrained in our jurisprudence") (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

whenever possible,"[74] particularly in the absence of bad faith by an offending party or prejudice to a non-moving party.[75]

### 2.    Fed. R. Civ. P. 14

Rule 14(a) of the Federal Rules of Civil Procedure governs when a defendant may file a third-party complaint.  A defendant must obtain leave of court to file a "third-party complaint more than 14 days after serving its original answer."[76]

Whether to grant or deny leave to file a third-party complaint is a matter within the sound discretion of the Court.[77] But because Rule 14 is intended to reduce the multiplicity of litigation, courts construe it liberally.[78]  Unless the filing will prejudice another party, courts should generally allow the filing "of a proper third-party action."[79] The rule, however, does not permit indiscriminate filing of all third-party complaints—it only permits a defending party to file a third-party complaint against "a nonparty who is or may be liable to [the defending party] for all or part of the claim against [the defending party]."[80]

Defendants typically invoke Rule 14(a) in two situations: (1) where a tortfeasor is seeking contribution from a joint tortfeasor, and (2) where an insured is pursuing

---

[74] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1319 (10th Cir. 2011).

[75] *See, e.g.* sources cited *infra* note 22.

[76] Fed. R. Civ. P. 14(a)(1).

[77] *AK Steel Corp.*, 2016 WL 6163832, at *4.

[78] *Lansing Trade Grp., LLC v. OceanConnect, LLC*, No. 12-2090-JTM-GLR, 2013 WL 120158, at *1 (D. Kan. Jan. 9, 2013).

[79] *Id.* (quoting *Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 635 (D. Kan. 1993)).

[80] *Id.* (quoting Fed. R. Civ. P. 14(a)(1)).

indemnification.[81] While the rule may be invoked in other situations, secondary or derivative liability on the part of the proposed third-party defendant is central to properly invoking Rule 14.[82]

Whether to allow filing of a third-party complaint under Fed. R. Civ. P. 14 is "a matter within the sound discretion of the Court."[83] When exercising this discretion, some of the relevant factors considered by the court include:

> (1) the benefits of a single action versus prejudice to the other party and confusion, (2) the timeliness of the request and prejudice to the plaintiff in delay, (3) whether the main case would unnecessarily expand in scope, (4) whether impleading new parties would unduly delay or complicate the trial, and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[84]

### D.     Discussion

The Court must first consider whether Defendants demonstrate good cause for failing to file their motion prior to the Scheduling Order deadlines. As already examined above (*see* discussion *supra* section IV.D.1), the Court finds good cause under Rule 16(b)(4) for Defendants' failure to timely seek leave to file the Third-Party Complaint prior to the scheduling order deadline.

Next, the Court determines whether the proposed third-party complaint is proper under Rule 14. Defendants are not tortfeasors seeking contribution from a joint

---

[81] *AK Steel Corp.*, 2016 WL 6163832, at *3.

[82] *Lansing Trade Grp., LLC*, 2013 WL 120158, at *2.

[83] *Id.* at *1-*2 (citing *Willard,* 216 F.R.D. at 514; *Clark v. Assocs. Commercial Corp.,* 149 F.R.D. 629, 635 (D. Kan. 1993); s*ee also First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992).

[84] *Willard*, 216 F.R.D. at 514 (D. Kan. 2003) (citing *City of Wichita, Ks. v. Aero Holdings, Inc.*, No. 98-1360-MLB-KMH, 2000 WL 1480490, at *1 (D. Kan. Apr. 7, 2000)).

tortfeasor, and although Plaintiff, as the insured, is pursuing defense and indemnification, Defendants are not. But Defendants are seeking a declaration of their legal duties to the proposed third-party defendants, and after application of the other Rule 14 factors, the Court finds a balance of those factors weigh in favor of permitting Defendants to file their pleading.

The Court finds very little prejudice to Plaintiff in the filing of the Third-Party Complaint. Both parties sought to be added are already parties to the underlying action and deciding all coverage issues in a single case certainly reduces the number of courts involved in this dispute. There is little chance of confusion of the issues, as the same insurance companies are involved in the coverage issues for all parties (Plaintiff, Mr. Schlup, and the Center), and the nature of the relationship(s) between the three are already at issue. Along those same lines, although the scope of this declaratory action would expand in scope, the Court does not find this expansion to be unnecessary—again, the addition of Mr. Schlup and the Center would merely reflect those parties present in the underlying action. The impleading of the new parties would not unduly delay this matter in any additional way, as no further discovery will be permitted, and a strict summary judgment deadline is being imposed.

Equally important to this Court is, whether Defendants assert their counterclaim in this action, or file a separate action, it is clear they intend to make those claims. Permitting Defendants to do so within this case, already in progress, furthers the interests of economy and efficiency for both the court and the parties. It would be "wastefully

duplicative" to require Defendants to assert their coverage claims against Mr. Schlup and the Center in a separate action.[85]

### E.      Conclusion on Filing of Third-Party Complaint

As described above, the balance of factors weigh in favor of permitting Defendants to file their proposed Third-Party Complaint.  Defendants must file their Third-Party Complaint within **7 days**.

## VI.     Conclusion

From the inception of this case, the parties each agreed a declaratory judgment was the "best and most efficient remedy" to clarify the legal interests of the parties.[86] However, given the choices made by both sides in the prosecution of this matter, the Court finds the case perhaps not progressing as effectively as it may have, had Plaintiff presented its jurisdictional argument or Defendants sought to add parties at an earlier time.  Both sides have changed positions and strategies since the inception of this case.

And though Defendants argue against stay by noting Plaintiff put the coverage issues in dispute when she filed this lawsuit, Defendants conveniently ignore the friction created between the state and federal courts when Defendants chose to remove the action. Though certainly in their purview to do so, Defendants' choice created the potential of

---

[85] *Amco Ins. Co. v. Keim Properties, LLC*, No. 16-CV-2842-JAR-TJJ, 2017 WL 2774652, at *3 (D. Kan. June 27, 2017).

[86] *See* Petition (ECF No. 1-1, Ex. A at ¶ 44) and Answer (ECF No. 9 at ¶ 44).  The Petition states, and the Defendants in their Answer admit as follows: "[Petition:] A decision by this Court would serve a useful purpose because it would settle the controversy between Plaintiff and Defendant, clarify the legal relations and interests of each party, and a declaratory judgment action is the best and most efficient remedy under the circumstances set forth herein. [Answer]: Defendants admit the allegations of Paragraph 44."

differing factual findings.   Likewise, Plaintiff claims disadvantage by being forced to produce discovery in two forums, but there is little doubt Defendants will pursue a coverage action against Mr. Schlup and Southridge Retail Center in some forum, if not this one.

For the reasons stated above, the Court finds it most beneficial to keep this matter moving toward resolution on its full merits to the extent reasonably possible.   In that vein, although Defendants are permitted to amend their pleadings and complete their limited written discovery, no additional discovery will be permitted. Defendants must amend their Answer and file their Third-Party Complaint **within 7 days.** This matter will swiftly proceed to a pretrial conference on **September 30, 2020 at 10:00 a.m.** by telephone unless otherwise notified, with a proposed pretrial order due to the undersigned by **September 23, 2020**.   All other potentially dispositive motions (e.g., motions for summary judgment), must be filed by **October 23, 2020.**

For the reasons explained above:

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Stay Discovery (**ECF No.  34**) is **GRANTED in part and DENIED in part without prejudice**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to Amend their Answer to Assert Additional Defenses (**ECF No. 37**) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File a Third-Party Complaint (**ECF No. 38**) is **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Plaintiff's Responses to Discovery (**ECF No. 45**) is **GRANTED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 28th day of August, 2020.


   s/ Gwynne E. Birzer

GWYNNE E. BIRZER
United States Magistrate Judge