IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHEL SCHLUP, individually and as the Trustee of the Michel L. Schlup Revocable Trust dated June 2, 2010,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DEPOSITORS INSURANCE COMPANY, et al.,**<br><br>    Defendants.<br><br>**DEPOSITORS INSURANCE COMPANY, et al.,**<br><br>    Third-Party Plaintiffs,<br><br>    v.<br><br>**MICHAEL SCHLUP, et al.,**<br><br>    Third-Party Defendants. | Case No. 2:19-cv-02095-HLT |

## MEMORANDUM AND ORDER

This is a dispute between two insurance providers and three potentially covered parties who claim that the Insurers are obligated to defend them in an underlying state-court lawsuit. The primary contention between the parties is whether the claims in the underlying suit allege "personal or advertising injuries," which the policies effectively define as injuries arising out of slander, libel, or disparagement. The Insurers move for summary judgment on all claims in the case, arguing that they do not owe a duty to defend because there is no possibility for liability in the underlying suit stemming from slander, libel, or disparagement. Doc. 67. Because the pleadings in the underlying suit and other extrinsic evidence do not support a possibility for liability arising out

of a "personal or advertising injury," the Court finds that the Insurers do not owe a duty to defend in the underlying suit and are entitled to summary judgment.

## I.      BACKGROUND

Plaintiff Michel Schlup, individually and as the trustee for the Michel L. Schlup Revocable Trust ("Michel"), initiated this case.[1] Michel brought this case against Depositors Insurance Company and AMCO Insurance Company (collectively, "Insurers"). In turn, the Insurers filed third-party claims against Michael Schlup ("Michael") and Southridge Retail Center, Inc. ("Southridge"). Michel and Michael are married. Michel was the sole shareholder of Southridge Retail Center, Inc. ("Southridge") in 2015. Michael was previously president of Southridge but resigned in 2009. Southridge owned and operated Southridge Retail Center ("the Center"), a retail shopping center in Overland Park, Kansas.

This dispute arises out of the sale of the Center. Bootleg Liquors, LLC ("Bootleg") was a tenant at the Center at the time of the sale.[2] Bootleg owed over $160,000 to Southridge and Plaza Garden Shops ("PGS"). PGS is owned by Michel's trust. Following the sale of the Center, Bootleg sold its inventory to Lukas Liquors and used the proceeds to pay money owed to PGS and Southridge.

The sale of the Center is currently being litigated in a state-court action styled *HPC Metcalf Investors, LP, v. Southridge Retail Center, Inc.*, which is pending in Kansas state court

---

[1]   Although Michel files suit on behalf of herself individually and as trustee for the trust, there appears to be no distinction for purposes of this motion. The Court therefore refers to Michel and the trust collectively as "Michel."

[2]   The Insurers have contested many of the additional facts set forth in the response because the "fact was not identified in responses to discovery regarding specific statements that constitute extrinsic evidence to support a claim for disparagement, libel or slander." *See, e.g.*, Doc. 74 at 6. The Court understands the Insurers' position that Michel, Michael, and Southridge have only come forward with limited facts that would support a duty to defend, and that their arguments should therefore be so limited. But the Insurers have not actually disputed the underlying truth of many of the additional facts set forth in the response, many of which are necessary to understand the dispute at issue. Thus, the Court includes them for background purposes.

("underlying suit"). In the underlying suit, HPC Metcalf Investors, LP ("HPC") sued several parties, including Southridge, Michael, and Bootleg. HPC subsequently filed a second amended petition naming Michel as a defendant as well.

HPC alleges that Michel, Michael, and Southridge willfully made false representations to induce HPC to purchase the Center in 2015, including that they failed to disclose the financial difficulties of some of the Center's tenants, including Bootleg. HPC allegedly discovered the misrepresentations after the sale closed on December 22, 2015. As a result, HPC claims the defendants in the underlying suit were unjustly enriched and it asserts claims for breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract, fraud, negligent misrepresentation, fraud by silence, unjust enrichment, and civil conspiracy. Specifically with regard to Bootleg, HPC claims that the defendants in the underlying suit identified potential buyers of Bootleg's inventory and wholesale accounts with the knowledge that sale of those assets would result in a vacancy in the Bootleg space and would negatively impact the rental income of the Center.[3]

This case relates to whether the Insurers have a duty to defend Michel, Michael, and Southridge in the underlying suit. There are two insurance policies at issue. Depositors issued a Premier Businessowners Policy to Southridge effective January 3, 2015, through January 3, 2016. AMCO issued a Commercial Umbrella Liability Insurance Policy to Southridge effective for the same dates. The primary policy extends coverage where "the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." "'Personal and advertising injury' means injury . . . arising out of . . . [o]ral or written publication,

---

[3] HPC alleges Bootleg terminated its lease on February 2, 2016, shortly after the sale of the Center closed. Doc. 1-3 at ¶ 89.

in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Certain exclusions apply. The umbrella policy issued by AMCO contains a similar provision.[4]

The Insurers initially notified Michael and Southridge that they had no duty to defend. But after some discussions between the parties, counsel for Michael and Southridge subsequently argued to the Insurers that the allegations in the underlying suit, and in particular the claim for tortious interference, involved allegations that constituted "personal and advertising injury." This was based on some allegedly "disparaging" remarks that Michael made to the owners of Bootleg and others that Bootleg was no longer a viable business and that it needed to sell its inventory and go out of business.

Based on this additional information, the Insurers offered to defend Michael and Southridge in the underlying suit subject to a full reservation of rights. In keeping with that reservation of rights, the Insurers sought further clarification about their duty to defend, including evidence of any statements made that were false, financial information suggesting that the statements about Bootleg were false, to whom the statements were made, and when they were made.

A second amended petition in the underlying suit subsequently added Michel as a defendant. The Insurers sent Michel a letter denying a duty to defend or indemnify. That letter also informed Michel that the allegations in the underlying suit did not fall under "personal and advertising injury" as defined in the Insurers' policies.

---

[4] The relevant language of the policies appears to be functionally identical. None of the parties argue there are any distinctions.

That denial prompted Michel to file this declaratory-judgment action seeking a ruling that the Insurers have a duty to defend her in the underlying suit.[5] The Insurers answered and sought leave to file a third-party complaint against Michael and Southridge, which was granted. The third-party complaint asserts that the Insurers have no duty to defend Michael and Southridge, and that the Insurers are owed reimbursement for defense costs made under the reservation of rights. *See* Doc. 66 at 11-13.

The Insurers now move for summary judgment on all claims. Specifically, they argue that (1) they have no duty to defend Michael because he is not an insured under the policies; (2) they have no duty to defend Michel, Michael, and Southridge because these three have failed to show that HPC alleges damages for a "personal or advertising injury"; (3) even if HPC did seek damages because of "personal or advertising injury," the allegedly disparaging statements were not made during the policy period or exclusions under the policies would bar coverage; and (4) they are entitled to reimbursement of the defense costs they have already expended defending Michael and Southridge in the underlying suit.

## II.   STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567,

---

[5]   The petition was filed in state court but then removed to federal court. Doc. 1.

569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.  ANALYSIS

The ultimate issue in this case is whether the Insurers owe Michel, Michael, and Southridge a duty to defend in the underlying suit. The Insurers make several arguments as to why they do not owe a duty to defend, including that Michael is not an insured under the policies, that the underlying suit does not implicate the "personal or advertising injury" coverage, that any allegedly disparaging statements were made outside the policy period, and that two coverage exclusions to the "personal or advertising injury" provision apply. Because the second issue—whether the pleadings or any extrinsic evidence in the underlying suit implicate the "personal or advertising injury" coverage—is dispositive of the other arguments, the Court starts there.

### A.  Potential for Liability for "Personal and Advertising Injury"

#### 1.  Duty to Defend Standard

"Under Kansas law, an insurer has a duty to defend if there is any potential for liability under a policy of insurance." *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1175 (D. Kan. 2012); *Am. Motorists Ins. Co. v. Gen. Host Corp.*, 946 F.2d 1489, 1490 (10th Cir. 1991) (stating that there is a duty to defend if an insured can show a "non-frivolous possibility" that a claim is covered). "The relevant determination for the insurer is whether there is 'a possibility that under the facts of the case the insured may be found legally obligated to pay damages because of an occurrence that was an insured risk; that is, a possibility that there may be a duty to indemnify arising out of the facts of the case.'" *Bankwest v. Fid. & Deposit Co. of Maryland*, 63 F.3d 974, 978 (10th Cir. 1995) (quoting *Am. Fidelity Ins. Co. v. Emps. Mut. Cas.*

*Co.*, 593 P.2d 14, 19-20 (Kan. Ct. App. 1979)). The duty to defend is broader than the duty to indemnify because the duty to defend turns only on the "possibility" that the claim is covered, while a duty to indemnify turns on an actual finding of liability. *See id.*; *see also Miller v. Westport Ins. Corp.*, 200 P.3d 419, 424 (Kan. 2009).

The key consideration in determining whether there is a duty to defend is whether the underlying claim is potentially covered under a policy. *See Miller*, 200 P.3d at 425 (stating that "the essential inquiry when determining the existence of a contractual duty to defend involves potential for coverage, not liability"). "The insured has the burden to prove coverage under the policy." *Hartford*, 911 F. Supp. 2d at 1176. "[W]here there is no coverage there is no duty to defend." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 406 (Kan. 1973); *Hartford*, 911 F. Supp. 2d at 1176 (quoting *Spruill* and stating that there is "no duty to defend an action brought 'wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured'").

Under Kansas law, the universe of facts from which a duty to defend is determined is broader than just the pleadings in the underlying suit. *See Hartford*, 911 F. Supp. 2d at 1175. Whether there is a duty to defend is determined from both the underlying pleadings as well as any facts that the insurer knows or could reasonably discover. *Id.*; *Collective Brands, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 2013 WL 66071, at *16 (D. Kan. 2013) ("In Kansas, the insurer must start with the pleadings and further assess any other reasonably discoverable facts demonstrating a possibility of coverage." (internal quotation and citation omitted)). Those additional facts are sometimes referred to as extrinsic evidence. If that extrinsic evidence gives rise to a "potential of liability," the insurer owes a duty to defend. *Hartford*, 911 F. Supp. 2d at

7

1175. "This possibility may be remote, but if it exists the company owes the insured a defense." *Spruill Motors*, 512 P.2d at 407.

In Kansas, insurance policies are contracts, and their interpretation is a question of law. *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1233 (10th Cir. 2015). Courts should "consider the policy as a whole, rather than viewing provisions in isolation." *Id.* Where the language is unambiguous, a court should enforce the contract as made. *Id.* Here, the relevant portion of the policies cover liability stemming from "personal and advertising injury." "Personal and advertising injury" under the policies is injury arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

Accordingly, to determine whether there is a duty to defend, the Court considers whether the pleadings and extrinsic evidence in the underlying suit give rise to a possibility that Michel, Michael, and Southridge could be held liable for actions that fall within that coverage.

### 2. Allegations in the Pleadings of the Underlying Suit

The Insurers first argue the underlying suit does not <u>specifically</u> allege damages because of a "personal or advertising injury," meaning slander, libel, or disparagement. Doc. 68 at 19-20. The Insurers are correct that HPC does not literally assert any of these causes of action. It is uncontroverted that the causes of action in the underlying suit are for breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract, fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy. *See* Doc. 66 at 3-4 (factual stipulation in Pretrial Order); *see also* Doc. 1-3. HPC does not assert any claims for slander, libel, or disparagement.[6]

---

[6]   The Insurers do not argue that such specific claims must be pleaded, only that they have not been. A previous ruling by the then-presiding Judge Carlos Murguia acknowledged that "personal and advertising injury" is broad

8

Michel, Michael, and Southridge nevertheless dispute this issue, stating that the "thrust" of the underlying suit is that Michael "made false misrepresentations as to the viability of Bootleg's tenancy" and that those allegations "form the basis for the alleged defamatory or disparaging statements." Doc. 73 at 25-26. They seem to be arguing that they are entitled to a defense by the Insurers because they have been accused in the underlying suit of making misrepresentations during the sale of the Center. And that certainly is what the underlying suit alleges—that Michel, Michael, and Southridge, along with several other defendants, made misrepresentations about the financial state of certain tenants, which subsequently caused HPC to overpay for the Center and suffer other damages.

But Michel, Michael, and Southridge make no effort to connect these alleged misrepresentations to the coverage language of the policies. The policies do not cover liability stemming from just any misrepresentation. Rather, they offer coverage for "personal or advertising injury," meaning "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Alleged statements that several tenants in the Center were in <u>good</u> financial shape when they in fact were <u>not</u> in good financial shape are not slander, libel, or disparagement just because they are alleged to be false. Slander, libel, and disparagement involve the communication of false and <u>defamatory</u> statements that harm the defamed party's reputation. *Hartford*, 911 F. Supp. 2d at 1178. As the Insurers point out in their reply, it is "nonsensical" to suggest that it was slander, libel, or disparagement to suggest that Bootleg was a <u>viable</u> business. Such a statement does not cast Bootleg in a negative light or otherwise defame Bootleg's reputation. Accordingly, Michel,

---

enough to include claims for tortious interference with contractual relations, which HPC does allege. Doc. 27 at 7; *see also* Doc. 1-3 at ¶¶ 181-199; *Bankwest*, 63 F.3d at 979-80; *Hartford*, 911 F. Spp. 2d at 1177-78.

9

Michael, and Southridge have not met their burden of showing that the misrepresentations they allegedly made to HPC during the course of the sale qualify for coverage under the "personal or advertising injury" provision of the policies, or that the pleadings in the underlying suit otherwise create the possibility of liability under the policies.

### 3.     Extrinsic Evidence of Personal or Advertising Injury

Second, the Insurers argue that other statements allegedly made by Michael do not implicate their duty to defend. As explained above, whether there is a duty to defend is determined based on the underlying pleadings as well as any extrinsic evidence that an insurer knows or could reasonably discover. *Id.* at 1175. There are two statements that Michel, Michael, and Southridge have identified as potentially "disparaging" remarks that warrant a defense by the Insurers under the "personal or advertising injury" provision. The first is Michael's comment to the owner of Bootleg and others that Bootleg was not financially viable and needed to close. The second is a statement by Michael to Michel, Bootleg's owner, and possibly others that Bootleg had financial obligations to Southridge and PGS.[7] The Insurers argue that neither of these statements warrant coverage under the "personal and advertising injury" provision because they are not false and, therefore, are not slander, libel, or disparagement. *Id.* at 1178 (stating that slander and libel must include "<u>false</u> and defamatory words" (emphasis added)).

There doesn't seem to be any genuine factual dispute among the parties to this case that Bootleg was not financially viable.[8] It is likewise uncontested that Bootleg owed Southridge and

---

[7] Michel, Michael, and Southridge also reference conversations Michael had with Jeremy Tollie about Tollie possibly purchasing Bootleg. The sale of Bootleg to Tollie ultimately fell through before the sale of the Center occurred. Given these facts, it's unclear how Michael's conversations with Tollie could relate to any "personal or advertising injury" alleged by HPC arising out of the sale of the Center.

[8] The Insurers rely on testimony by Joyce Biggers, the ostensible owner of Bootleg, who testified that Bootleg was not a viable business. Doc. 68 at 21; *see also, e.g.*, Doc. 68-14 at 5 (interrogatory responses of Bootleg stating that "Bootleg was losing too much money to continue operations" and that "Bootleg was failing once the wholesale accounts went away and the business simply couldn't survive"); Doc. 68-16 at 11 (Biggers testifying that Bootleg was never profitable). These documents are attached to the Insurers' motion. But they don't appear to be included

PGS over $160,000. *See* Doc. 74 at 7. Given the apparent truth of Michael's statements about Bootleg—that it was not viable and that it owed money—these statements do not constitute slander, libel, or disparagement because they weren't false.

These statements would also fail to qualify as slander, libel, or disparagement to the extent Michael made them to Bootleg. Slander and libel—and the language of the policies—require publication of the allegedly defamatory statements to a third party. *See Hartford*, 911 F. Supp. 2d at 1178. These statements were allegedly made about Bootleg to Bootleg. Although it is their burden to establish coverage, Michel, Michael, and Southridge do very little to establish that any alleged statements meet the definition of slander, libel, or disparagement in this way. The closest Michel, Michael, and Southridge come to alleging publication is a vague assertion that these statements were made to Bootleg and "others." But when confronted with a summary-judgment motion, it is the opposing party's burden to come forward with evidence that creates a genuine issue of fact. Vague assertions that statements were possibly made to unidentified "others" is not enough to satisfy that burden.

Michel, Michael, and Southridge contend that it is irrelevant what they believed about Bootleg's viability and that the only thing that matters is what HPC believed about Bootleg's viability. They argue that "HPC claims Michael's statements regarding the financial condition of Bootleg were false." Doc. 73 at 26. But as discussed above, those false statements were Michael's

---

in the Insurers' statement of facts. However, Michael's affidavit in support of the response brief states, "It was clear to me that Bootleg Liquors, LLC was not going to survive at the Center." Doc. 73-1 at 5. And in their additional statement of facts, Michel, Michael, and Southridge stated that Southridge and PGS were unwilling to continue financing Bootleg, and that Bootleg need to sell its inventory to pay down the debts owed to Southridge and PGS. Doc. 73 at 21. The Insurers contest these additional statements of facts, but only because they were not identified as extrinsic evidence to support a claim for slander, libel, or disparagement. Doc. 74 at 11. Based on this, and despite the parties' convoluted approach to presenting the facts in this case, it appears undisputed among the parties to this case agree that Bootleg was not a viable business and that it owed considerable debts.

11

representations as part of the sale of the Center that Bootleg was a <u>viable</u> tenant. As discussed above, that is not slander, libel, or disparagement.

To the extent Michel, Michael, and Southridge claim that HPC believes Michael's statements <u>to Bootleg</u> about its viability were false, *id.* ("HPC claims Bootleg was a viable tenant and they expected Bootleg to continue rent and CAM payments through the end of its lease."), the Court is not convinced that any such belief forms the basis of any claim in the underlying suit. The relevant claim in the underlying suit is that the defendants, including Michel, Michael, and Southridge, tortiously interfered with the lease between HPC and Bootleg. But those allegations are merely predicated on allegations that the defendants engaged in activities that caused Bootleg to sell its inventory and vacate the Center. There is nothing to suggest that HPC is alleging the defendants achieved this tortious interference through slander, libel, or disparagement. In other words, there is nothing to support the notion that HPC is alleging that Michel, Michael, and Southridge tortiously interference with Bootleg's lease by <u>lying to Bootleg</u> about its viability, let alone by committing slander, libel, or disparagement.

Ultimately, Michel, Michael, and Southridge have failed to direct the Court to any allegations in the underlying suit, or any other extrinsic evidence, that supports the conclusion that HPC is alleging that Michael made any slanderous, libelous, or disparaging statements. The only portion of the second amended petition cited by Michel, Michael, and Southridge is paragraph 56. *See id.* But that paragraph only alleges that the defendants in the underlying suit never disclosed that Bootleg was considering a sale of its inventory or that Bootleg was non-compliant with its lease obligations. *See* Doc. 1-3 at ¶ 56. Contrary to what Michel, Michael, and Southridge argue, this does not suggest that HPC believes that Bootleg was in fact viable—only that the defendants in the underlying suit misled it to believe as much.

To be certain, HPC alleges that the defendants in the underlying suit took actions and made statements that led to Bootleg breaking its lease. But the policies do not cover just any claim for tortious interference, nor do they cover just any false statements—they cover injuries arising out of slander, libel, or disparagement. The distinction is significant. To overlook it would be to extend the specific coverage offered under the policies to any claim for tortious interference of contract, whether based on slander, libel, disparagement, or otherwise. The Court is tasked with enforcing the policies as written. *See BancInsure*, 796 F.3d at 1233. And after considering the coverage under the policies, HPC's pleadings, and the extrinsic evidence, the Court discerns no possibility that HPC's claims against Michel, Michael, and Southridge are covered under the "personal and advertising injury" provision. No reasonable factfinder could conclude otherwise.

### 4. Potential Additional Factual Information

Finally, Michel, Michael, and Southridge state in a footnote that additional information may still yet come to light in the underlying litigation and that they "intend to move this Court to supplement the record with additional information from the Underlying Litigation as it becomes available." Doc. 73 at 3 n.1. The Court notes that the response brief was filed in April 2021. As of the date of this order, no supplements have been filed. The Court also notes that attempts to stay this case pending final resolution of the underlying litigation have been unsuccessful. *See* Doc. 66 at 15 n.1. The underlying litigation has been pending since 2016, and the parties have not offered any recent updates of its status.

Upon a motion for summary judgment, it is the movant's burden to show the absence of a genuine issue of fact. The burden then shifts to the opposing party to come forward with evidence that a genuine issue of material fact does in fact exist. *See Matsushita*, 475 U.S. at 586-87. But the opposing party cannot simply put off this showing in hopes that some facts might eventually

13

materialize. This is especially true in this case, where the duty to defend turns on allegedly slanderous, libelous, or disparaging statements made by Michel, Michael, and Southridge. It is hard to understand how, after five years of litigation, they would have no knowledge of what claims are being asserted against them based on statements they would have made. Further, whether there is a duty to defend is made at the time of the demand, not after a full trial on the facts. *Am. Motorists*, 946 F.2d at 1491.[9] The relevant standard considers whether there is "any potential for liability under a policy of insurance," *Hartford*, 911 F. Supp. 2d at 1175, not whether there is a potential that more information that might eventually come to light.

Accordingly, the Court finds that Michel, Michael, and Southridge have not come forward with evidence showing that they face a potential for liability based on slanderous, libelous, or disparaging remarks they made. The Insurers therefore owe no duty to defend under the "personal and advertising liability" provision of the policies.

### B. Michael's Status As Insured, Statements Allegedly Occurring Outside the Policy Period, and Exclusions to Coverage

As noted above, the Insurers make other arguments about why they owe no duty to defend, including that Michael does not qualify as an insured under the policies, that Michel, Michael, and Southridge have not established that any allegedly disparaging comments were made during the applicable policy periods, and that other exclusions to the "personal and advertising injury"

---

[9] The Court notes that Judge Murguia previously denied the Insurer's motion for judgment on the pleadings, which Michel, Michael, and Southridge rely on to state that "the Court has already implicitly determined that Michel and her Trust have advanced non-frivolous theories of coverage that require Insurers to fulfill their duty to defend the claims against them in the Underlying Litigation." Doc. 73 at 27. Judge Murguia did state that "[i]n light of the underlying suit's allegations and the extrinsic evidence known to [the Insurers], the court cannot conclude that plaintiff's theory of coverage is frivolous as a matter of law." Doc. 27 at 8. But importantly, that ruling was in the context of a motion for judgment on the pleadings, which employs the more forgiving standard used for motions under Rule 12(b)(6). Doc. 27 at 2-3. The motion was denied, meaning that Michel had at least plausibly asserted a claim that she was owed a duty to defend in the pleadings. But Michel herself did not likewise seek judgment on the pleadings, and thus the question of whether there is in fact a duty to defend progressed to summary judgment. As explained above, the Court finds that Michel, Michael, and Southridge have not demonstrated any genuine issue of material fact on that issue, and the Insurers are entitled to summary judgment.

provision apply. Because the Court has found that Michel, Michael, and Southridge have failed to come forward with evidence supporting a conclusion that the underlying suit potentially exposes them to liability for "personal or advertising injury," the Court does not reach these alternative arguments.

### C. Reimbursement of Defense Costs

The Insurers finally argue that they are entitled to reimbursement of the costs incurred in defending Michael and Southridge in the underlying suit because they did not owe any obligation to defend under the terms of the policy. In response, Michael and Southridge only argue that the Insurers are not entitled to reimbursement of defense costs because they do have a duty to defend. Doc. 73 at 29. Michael and Southridge do not make, and have therefore waived, any argument that the Insurers are otherwise legally prohibited from seeking reimbursement. *See id.*

As explained above, the Court finds the Insurers owe no duty to defend Michael or Southridge. Based on the arguments presented regarding reimbursement, the Court finds the Insurers are entitled to a reimbursement of defense costs already expended in defense of Michael and Southridge in the underlying suit.

### IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants/Third-Party Plaintiffs Depositors Insurance Company and AMCO Insurance Company's Motion for Summary Judgment (Doc. 67) is GRANTED. Judgment is entered in favor of the Insurers on Michel's claim that the Insurers owe her a duty to defend based on the "personal and advertising injury" provision of the policies. Judgment is also entered in favor of the Insurers on their third-party claim against Michael and Southridge that the underlying suit does not seek damages for "personal and advertising injury" and on the Insurers' claim that they are entitled to reimbursement for defense costs already

expended in the underlying suit. Based on these rulings, the Court does not reach a decision on the Insurers' remaining third-party claims.

THE COURT FURTHER ORDERS that the trial date set for October 25, 2021, is VACATED.

THE COURT FURTHER ORDERS that the Insurers, Michael, and Southridge shall meet and confer to try to reach consensus on the amount of defense costs to be reimbursed. If the parties are unable to reach consensus on this issue within 30 days of this order, they shall notify the Court, and the Court will set an appropriate briefing schedule to resolve this matter.

IT IS SO ORDERED.

Dated: September 7, 2021                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE